IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HASINA AKILA HAKEM BEY, ) <br> a/k/a Ronina Sims-Cammon, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> COOK COUNTY, ) <br> ) <br> Defendant. ) | No. 10 C 6902 <br><br> Judge Robert W. Gettleman |

# MEMORANDUM OPINION AND ORDER

On October 26, 2010, plaintiff Hasina Akila Hakem Bey filed a one-count complaint alleging that defendant Cook County discriminated against her based on her national origin and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq. On August 14, 2012, this court dismissed her suit for lack of jurisdiction. Bey v. Cook County, 10 C 6902, 2012 WL 3476942 (N.D. Ill. Aug. 14, 2012). After exhausting administrative remedies, plaintiff filed a Second Amended Complaint alleging the same Title VII violation. Defendant Cook County has filed the instant motion for summary judgment pursuant to Fed.R.Civ.P. 56, contending that no genuine issue of material fact exists and that defendant is entitled to judgment as a matter of law. For the reasons stated below, defendant's motion is granted.

## **BACKGROUND**[1]

---

[1]The following facts are, unless otherwise specified, undisputed and come from the parties' L.R. 56.1 statements. Plaintiff's response to defendant's Rule 56.1 statement (Doc. 111) contains improper answers; many paragraphs include extraneous and additional information after stating whether the defendant's proffered fact is disputed or undisputed. The court's previous summary judgment opinion stated that plaintiff's response to defendant's statement of facts was improper because it added "additional, irrelevant information, and in lieu of filing a statement of
(continued...)

Plaintiff was employed as a Clerk V in the Adult Emergency Services Department of John H. Stroger Hospital in Cook County beginning August 18, 2008. Plaintiff's legal name is Ronina Sims-Cammon, but she claims that she began using the "holy name" of Hasina Akila Hakem Bey in 2006, after her conversion to Islam. Much of the controversy in the instant suit revolves around plaintiff's use of her holy name at the hospital and the events of January 2009.

In early January 2009, plaintiff called in sick to work for two weeks. Defendant alleges that plaintiff was working to legally change her name during that time period and that prior to January 2009, she had not used her holy name or worn a religious headdress at the hospital. Plaintiff claims that she both used her holy name and wore a headdress since the date she was hired. When plaintiff attempted to return to work on January 13, 2009, she was not allowed to

---

[1](...continued)
additional facts as Local Rule 56.1(b)(3)(C) instructs." Despite this warning, plaintiff filed the same response to the instant motion, replete with additional information, to defendant's statement of facts. Defendant has moved to strike the additional information added to ¶¶ 1-4, 12, 15, 30, 38, 39, 41, 44, 46-48, 50, 52, 54, 58, 59, 62, 64, 67, 71-76, 78, and 80 of plaintiff's response, which are undisputed, although plaintiff impermissibly included further information in each of these paragraphs. Because plaintiff's response to defendant's statement of facts violates Local Rule 56.1, the request to strike that additional information is granted. Defendant has also moved to strike the answers to ¶¶ 9, 20-22, 28, 35, 55, 57, 63, 65, 66, and 68. These paragraphs claim that the statement of fact is disputed, but then proceed to give additional facts and citations that do not contradict the defendant's statement. Those paragraphs are deemed admitted. Finally, in many disputed paragraphs, plaintiff has attempted to shoehorn additional facts into their responses to those paragraphs, which is also improper under Local Rule 56.1(b)(3)(B). The request to strike that additional information is also granted. See Bordelon v. Chicago School Reform Bd. of Trustees, 233 F.3d 524, 527 (7th Cir. 2000) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."); McGuire v. United Parcel Serv., 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission."); Ammons v. Aramark Unif. Services, Inc., 368 F.3d 809, 817 (7th Cir. 2004) (finding no abuse of discretion where the district court struck additional facts that should have been included in a separate statement).

do so because her clearance form, required when a hospital employee is out sick for more than five days, was not accepted. Plaintiff tendered a new clearance form to the human resources department on January 13, 2009, and talked over the phone with the director of human resources, Cecil Marchand, regarding her clearance. Plaintiff claims that during the phone call Marchand harassed plaintiff and purposefully mispronounced her holy name. After this incident, on January 15, 2009, plaintiff filed a complaint for discrimination with the Illinois Department of Human Rights ("IDHR") and the EEOC.

When she returned to the hospital on January 16, 2009, plaintiff requested an ID card with her holy name on it from the human resources department and presented paperwork related to her holy name that she had filed with the Recorder of Deeds. The human resources department issued the new identification card but later realized that the paperwork presented did not effectuate a legal name change. Human resources personnel contacted plaintiff's supervisor, Jamil Ahmad, to advise him that plaintiff's newly issued ID card had been deactivated, and that she needed to turn in that card and retrieve a new ID card with her legal name on it.

Plaintiff's name was crossed off the work schedule for January 19 and plaintiff did not work that day. Despite the deactivation of her ID card, plaintiff attended work on January 20 and January 21, 2009. She filled out manual time sheets to record her hours worked, and her direct supervisor, John Jackson, approved those time sheets. On January 22, 2009, Ahmad discovered that plaintiff had worked two days without retrieving her new ID card and told plaintiff to go to the human resources department.

The parties dispute what occurred in the human resources department that day. Plaintiff alleges that Marchand immediately demanded that she remove her religious headdress, and when

she refused, told her she was fired. Plaintiff alleges that the two argued for approximately 15 to 20 minutes in front of the receptionist and other hospital employees, and that Marchand began tapping plaintiff on the face with an ID card. After the confrontation in the reception area, plaintiff claims that Marchand took her back to a conference room. In that conference room, Marchand allegedly told her she needed to take the new ID card with her legal name on it. He allegedly repeated his demand that she remove her headdress. He then repeated his statement that she was fired, told her she would receive a "certified copy" in the mail, and called security to remove her.[2] Plaintiff alleges that she was fired by Marchand on January 22, 2009, for reasons related to discrimination based on her religion and national origin and in retaliation for her discrimination claim. She states that she attempted to contact various supervisors at the hospital regarding her termination after January 22, but received no response.

Defendant disputes this version of events. According to defendant, plaintiff went to the human resources department on January 22 and was asked by Marchand to surrender her newly issued ID card with her holy name on it. Plaintiff refused to do so and allegedly became unruly and was escorted out of the hospital by the police. Defendant claims that Marchand never asked plaintiff to remove her headdress, never told plaintiff she was fired in the presence of the receptionist, and never asked plaintiff to adjourn to a conference room. There is no documentation to suggest that plaintiff was fired on January 22, 2009, and defendant asserts that

---

[2]Plaintiff alleges that Marchand made other comments and took other actions, but since plaintiff did not include this information in her complaint to the Illinois Department of Human Rights, those claims cannot be considered by the court. Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989); Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994).

4

such a unilateral act would be contrary to hospital policy. Plaintiff was on the hospital work schedule until mid-February, but plaintiff did not return to work after January 22, 2009.

On February 2, 2009, plaintiff received a letter from Ahmad's assistant, which indicated that she had not shown up to work or called to explain her absence for more than five days, that this constituted work abandonment, and that she could be terminated if she did not contact the hospital by February 4, 2009. Defendant claims that after receiving the letter, plaintiff called Ahmad and was told that she had not been fired and could report to work. According to defendant, plaintiff refused to return to work and told Ahmad that she would "see him in court." On February 17, 2009, Marchand wrote a letter to plaintiff informing her that she would be terminated effective February 20, 2009, because she had abandoned her job.

## DISCUSSION

**A.     Summary Judgment Standard**

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Unterreiner v. Volkswagen of Am., Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed.R.Civ.P. 56(c); Becker v. Tenenbaum–Hill Assocs., Inc., 914 F.2d 107, 110 (7th Cir. 1990).  The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services–Milwaukee Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. See Sarsha v. Sears. Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993). The nonmoving party must, however, do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

**B.     Title VII Discrimination Standard**

Title VII forbids actions that discriminate against an individual with respect to her "compensation, terms, conditions, or privileges of employment" and that are taken on the basis of an individual's sex, race, or national origin. 42 U.S.C.2000e–2(a)(1). A plaintiff may attempt to prove her claim one of two ways: she may either present direct evidence of discrimination or follow the burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Collier v. Budd Co., 66 F.3d 886 (7th Cir. 1995).  "In this circuit, 'direct evidence' is defined as evidence which 'if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption.'" Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir. 1997) (quoting Randle v. LaSalle Telecomm., 876 F.2d 563, 569 (7th Cir. 1989)). In an employment discrimination case, "direct evidence" is

"what [the defendant] and its employees said or did in the specific employment decision in question . . . ." Plair, 105 F.3d at 347. It is "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents . . . ." Troupe v. May Dep't Stores, Co., 20 F.3d 734, 736 (7th Cir. 1994). To qualify as direct evidence of discrimination, remarks by decision makers must "speak directly to the issue of discriminatory intent, [and] must also relate to the specific employment decision in question." Oates v. Discovery Zone, 116 F.3d 1161, 1170 (7th Cir. 1997) (citing Randle, 876 F.2d at 569). In other words, plaintiff must establish a "nexus" between the allegedly discriminatory statements and the adverse employment decision. Fuka v. Thomson Consumer Elec., 82 F.3d 1397, 1403–04 (7th Cir. 1996).

Alternatively, a plaintiff may use the burden-shifting method of proof set forth in McDonnell Douglas and prove his case indirectly. Plair, 105 F.3d at 347. The McDonnell Douglas method is a substitute for proving discrimination by direct evidence because employers do not normally explicitly state their intention to discriminate. Id. at 890. This case proceeds under the McDonnell Douglas burden-shifting framework.

Under the McDonnell Douglas framework, a plaintiff must first demonstrate a prima facie case of discrimination by a preponderance of the evidence. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 505, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). To establish a prima facie case of discrimination, the plaintiff must show: (1) that she belongs to the protected class; (2) that she was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) other similarly situated individuals not in the class were treated more favorably. McDonnell Douglas, 411 U.S. at 802; Collier, 66 F.3d at 889.

7

If the plaintiff successfully demonstrates a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. An employer that has proffered a legitimate, non-discriminatory reason for the discharge is entitled to summary judgment unless the plaintiff presents evidence that the proffered reasons are pretexts for discrimination. Collier, 66 F.3d at 889; see also Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir. 1994). At all times, the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her. See Hughes v. Brown, 20 F.3d 745, 747 (7th Cir. 1994).

**C.     Discrimination Based on Religion and National Origin**

The parties do not dispute that plaintiff has satisfied the first two elements of the prima facie case: she is a member of the protected class and her job performance was satisfactory. The parties do dispute whether plaintiff suffered an adverse employment action in January 2009, and whether plaintiff has demonstrated that similarly situated individuals not in the class were treated more favorably.

Plaintiff claims that she was fired by Marchand on January 22, 2009, once in front of the receptionist for the human resources department and once privately in a conference room. Defendant denies that plaintiff was fired on that day and states that plaintiff was legitimately fired in February after her failure to report to work after the January incident, a non-discriminatory reason.

The court is troubled by the inconsistencies in plaintiff's version of events. For example, plaintiff's complaint to the IDHR and the EEOC corroborates defendant's version of events and contradicts her current claims. Plaintiff now alleges that the ID card issued to her in August 2008

8

displayed her holy name and that she was never given an ID card with her legal name on it. The January 15, 2009, complaint to the IDHR, filed before the alleged termination on January 22, 2009, alleges that the individuals in human resources "harassed [her] about changing their employment records to inaccurately reflect [her] true name, nationality, and religion" and "changed their records and [her] work identification card *again* to reflect [her] slave name." (Emphasis added). Her complaint to the IDHR specifically mentions a disagreement over the name on her ID card, but plaintiff's pleadings and filings before this court deny that plaintiff was aware of any dispute over the name on her ID card until the date of her alleged firing, January 22, 2008. Plaintiff also now flatly denies any change to her ID card prior to January 22, 2008.

At the summary judgment stage, however, the court considers the record as a whole and draws all reasonable inferences in the light most favorable to plaintiff. Fisher, 979 F.2d at 1242. Despite the inconsistencies, plaintiff has sufficiently demonstrated a question of fact as to an adverse employment action and therefore meets the third element in the McDonnell Douglas analysis.

Plaintiff's claim fails on the fourth element of the McDonnell Douglas analysis, however, because she fails to identify any similarly situated employee who was treated more favorably. Without any explanation or citation, plaintiff states that "[i]n the present case, under the facts presented, there is no need to show that there were similarly situated employees treated more favorably." The court disagrees. Plaintiff has offered no evidence or support for the idea that the McDonnell Douglas framework does not apply or why it might be inappropriate in this case. The Seventh Circuit requires that the fourth prong of the test be met in the context of claims alleging religious and national origin discrimination. See, e.g., Patterson v. Indiana Newspapers, Inc., 589

9

F.3d 357 (7th Cir. 2009); Ghosh v. Indiana Dept. of Envtl. Mgmt., 192 F.3d 1087 (7th Cir. 1999).

Plaintiff attempts to briefly identify a similarly situated employee, in case McDonnell Douglas does apply, and falls short. Plaintiff points to a co-worker, Gayle Cole, who succeeded in having management "have meetings and discuss" her "issues" whenever she was upset and compares her to plaintiff, who allegedly did not get a response to her alleged complaints of harassment by coworkers. The Seventh Circuit has held, in the religious discrimination context, that "similarly situated employees must be 'directly comparable' to the plaintiff 'in all material respects,'. . . . This means that [plaintiff] must identify a comparison employee who held the same job[], engaged in the same or comparable []conduct[], did not hold her religious beliefs[], and was treated more favorably." Patterson, 589 F.3d at 365-66 (internal citations omitted). Cole also held the job of Clerk V, but plaintiff fails to identify any way Cole engaged in similar conduct and was treated more favorably, or whether Cole fell within her protected class. As a result, plaintiff has failed to establish a prima facie case of discrimination.

Even if plaintiff had established a prima facie case, defendant has offered a legitimate, non-discriminatory reason for plaintiff's termination in February 2009: plaintiff's failure to report to work without calling in. Plaintiff has not demonstrated that defendant's reason for terminating her is not pretextual. Instead, plaintiff attempts to move the burden to the defendant to provide evidence that Marchand did not terminate plaintiff on January 22, 2009. This burden-shifting is not proper under the McDonnell Douglas framework. Because plaintiff has not carried the burden of demonstrating that the defendant intentionally discriminated against her, defendant is entitled to summary judgment on plaintiff's Title VII discrimination claim.

**D.      Retaliation Claim**

Plaintiff has also alleged a retaliation claim in her complaint at paragraph 15. Title VII prohibits employers from taking adverse employment action or discriminating against an employee simply "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). "[U]nlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination." Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003). A plaintiff may proceed under the direct or indirect method to prove a claim of retaliation in violation of Title VII. Coleman v. Donahoe, 667 F.3d 835, 859 (7th Cir. 2012).

Under the direct method, a plaintiff must show that: "(1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there was a causal link between the protected expression and the adverse action." Alexander v. Gerhardt Enter., Inc., 40 F.3d 187, 195 (7th Cir. 1994). The causal nexus can be met through either direct evidence, such as an admission by the employer, or through a "convincing mosaic of circumstantial evidence" permitting that same inference. O'Leary v. Accretive Health, Inc., 657 F.3d 625, 630 (7th Cir. 2011). Plaintiff presents circumstantial evidence. To satisfy the convincing mosaic approach, plaintiff may demonstrate: "(1) suspicious timing, ambiguous statements and other bits and pieces from which an inference of retaliatory intent might be drawn; (2) evidence that similarly situated employees were treated differently; [or] (3) evidence

that the employer offered a pretextual reason for an adverse employment action." Jajeh v. County of Cook, 678 F.3d 560, 570 (7th Cir. 2012) (citing Coleman, 667 F.3d at 860).

Plaintiff has failed to demonstrate a sufficient causal nexus between her complaint and her alleged termination. Plaintiff points to the short amount of time that passed between the complaint and her alleged termination, and alleges that Marchand knew of her complaint by the time she was terminated in February. Timing alone, however, is insufficient to demonstrate a causal nexus. O'Leary, 657 F.3d at 635 ("temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter."); Scaife v. Cook County, 446 F.3d 735, 742 (7th Cir. 2006) ("Close temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment provided that there is other evidence that supports the inference of a causal link.").

Nor has plaintiff provided evidence that a similarly situated employee was treated differently, or that defendant's reason for her termination was pretextual. As a result, plaintiff has not demonstrated her claim under the direct method.

Under the indirect method, the McDonnell Douglas burden-shifting method of proof applies. Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1457 (7th Cir.1994). If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for its action. Id. Once defendant articulates such a reason, the burden shifts back to plaintiff to establish that defendant's proffered reasons are pretextual. Id.

To establish a prima facie case, plaintiff must demonstrate that she engaged in statutorily protected expression, she suffered an adverse action by her employer, that "[she] was performing [her] job satisfactorily and that [she] was treated less favorably than a similarly situated

employee who did not complain of discrimination." Leonard v. E. Ill. Univ., 606 F.3d 428, 431 (7th Cir. 2010). Plaintiff has failed to satisfy the third prong of the indirect method because she has failed to identify any similarly situated employee who was treated more favorably. Further, she has failed to show that the County's proffered legitimate, non-discriminatory reason is pretextual. Consequently, defendant is entitled to summary judgement on the retaliation claim.

**E.      Monell Claim**

Plaintiff also cites Monell v. Department of Social Services, 436 U.S. 658 (1978), in her complaint and argues that she has a Section 1983 claim against Cook County and the individual defendants. No individual defendants are named.

A municipality may be held liable for a constitutional deprivation under Monell if a plaintiff can demonstrate that she has suffered a constitutional injury resulting from a municipality policy, custom, or practice. 436 U.S. at 694. This policy, custom or practice requirement "distinguish[es] acts of the municipality from acts of employees of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible." Estate of Sims ex rel. Sims v. County of Bureau, 506 F.3d 509, 515 (7th Cir. 2007) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)). "Misbehaving employees are responsible for their own conduct; units of local government are responsible only for their policies rather than misconduct by their workers." Id. (quotations omitted).

Municipal liability is established by showing "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Id. Plaintiff asserts that the

13

evidence shows that despite the written policy permitting religious head coverings, there was an oral policy against such. The only evidence plaintiff points to is the deposition of Michelle Mitchell, a hospital employee who stated that she knew there were regulations against wearing scarves, hats, and other head gear in the hospital, but that she had no knowledge as to a policy about religious head coverings. She also stated that she had never told plaintiff to remove her head covering, nor had she ever heard anyone else ask plaintiff to do so. Mitchell does not wear a religious head covering. Such minimal and inconclusive evidence is insufficient to establish an informal hospital policy against religious head coverings that controverted the written policy. Because plaintiff has not demonstrated sufficient evidence of a <u>Monnell</u> claim, and defendant is entitled to summary judgement on the claim.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgement is granted.

**ENTER:** **November 28, 2012**

_____
**Robert W. Gettleman**
**United States District Judge**